## Case No. 11,473.

### PURINTON v. HULL OF A NEW SHIP.

[1 Ware, 556.] [1]

District Court, D. Maine. May 23, 1855. [2]

MARITIME LIENS — LABOR PERFORMED BY SUB-CONTRACTOR.

Under the lien law of Maine, where the joiner work on a ship is done under a single contract with the owner, for a stipulated price for the whole, a sub-contractor, who performs a part of the work, has the benefit of this lien, although the owner is under no personal liability to him.

The material facts in this case are, that the claimant, in November, 1854, being engaged in building a vessel at Wiscasset, of about 500 tons burden, contracted with John L. Chapman, to do the joiner work at the rate of $2.25 per ton. Chapman, in the progress of the work, engaged Purinton, the libellant, to do a portion of it, for which he was to be paid the sum of $175. Purinton, having performed his engagement, and not being paid, brought this libel against the vessel, and claims a lien upon it as security for the sum due.

Mr. Gilbert, for libellant.

Mr. Evans, for claimant.

WARE, District Judge. The facts in this case being admitted, the only question that arises is one of law; whether, when an owner, in the building of a vessel, contracts with a mechanic to do a certain portion of the work, for a stipulated price, and the contractor engages another mechanic to do a portion of the work for which he has contracted, such sub-contractor has, under the Revised Statutes of this state (chapter 125, § 35), a lien on the vessel, as collateral security for the price of his labor. As a general rule of the common law, it is certainly true that when one man engages another to build him a ship out of materials furnished by himself, or to do for him any other work, no obligation can grow out of this contract against himself, except in favor of the person with whom he contracts. He is personally bound to perform the obligations of his contract, and his property also is bound to the same extent as he is personally, but no further. If, in the execution of this contract, the contractor engages another person to do a part of the work, this sub-contractor is a stranger to the principal, the owner of the ship, who is under no personal obligation to him. The sub-contractor can maintain, on his contract with the undertaker, no personal action against the owner of the ship, and no personal obligation can arise against him out of such a contract, to which he is a stranger. If there is no obligation on him personally, neither can his property be bound. These are plain principles of the common law, and are founded in common sense and common justice. The question raised by this libel is, whether the Revised Statutes of this state have changed these principles of the common law in this particular case. And it will readily be admitted, that the plainest and most explicit language ought to be required in a statute to set aside, in a particular case, the plain principles of the common law, which govern in all other transactions between man and man; and to hold one man's property to be bound for the fulfilment of another man's obligations, in derogation of the clear principles of common right. The words of the law are: "Every ship-carpenter, caulker, blacksmith, joiner, or other person, who shall perform labor, or furnish materials for or on account of any vessel building or standing on the stocks," &c., "shall have a lien on such vessel for his wages or materials until four days after such vessel is launched," &c. Chapter 125, § 35. Every person who comes within the descriptive terms of law (and under the phrase "other persons," are included all who furnish materials or labor) is entitled to the benefit of the act. The lien is not made to depend on any special contract, but extends to all who have rendered service. There must, it is true, in all cases, be understood to be some sort of a contract. The services must be for or on account of the vessel, and be rendered by the procurement of some person who is so connected with the ship as to be authorized to procure them and appropriate them to this object, and not merely by the voluntary and unauthorized act of the person claiming the lien. But who that person may be, provided he has this authority, is immaterial—whether the owner or the contractor who undertakes the work. In either case the ship becomes the debtor, and as soon as the service is rendered, or the materials furnished, a contract or obligation immediately results, and the ship, by operation of law, becomes hypothecated for the debt. The result is, that every material man who has supplied materials, and every mechanic and laborer who has performed labor, has his separate and individual lien, however small his demand may be.

I am aware that this construction of the law may give rise to some practical inconveniences. The owner usually contracts with some one or two persons as master-builders to make his ship. They employ a large number of laborers on their own private account to do the work. The contract may be to pay so much for the ship completed, the builder providing the materials; or it may be so much for the work done, the owner furnishing the materials. The owner pays the master-builder, with whom he has contracted, from time to time, as the work advances. If the contractor fails to pay his laborers and material men, when he provides the material, and a large amount of these debts remain unpaid, as liens on the ship when it is completed, they undoubtedly may prove a serious embarrassment to the owner. This construction of the law imposes on the owner,

---

[1] [Reported by Edward H. Davies, Esq.]

[2] [Affirmed in Case No. 11,472.]

when his ship is built by contract, the necessity of seeing to the proper application of the money that he from time to time pays the contractor, or of reserving in his own hands a sufficient sum to meet all the unpaid claims of material men and of laborers employed in the work; and it appears to me that this was within the contemplation of the legislature. This may be not unnaturally inferred from the short time that the lien lasts, only four days after the ship is launched. When that time has elapsed the ship is clear of all secret and unknown liens. And it seems necessarily to be inferred from the enumeration and description of the persons entitled to the privilege, including not only ship-carpenters, who are usually the contractors, but also caulkers, blacksmiths, and other persons. On the construction contended for by the claimant, that the lien is given only when the contract is directly with the owner, if the ship is built by contract, all these persons, except the master carpenter, who undertakes the work, would be deprived of their privileges. Yet the words of the law, according to their natural, if not necessary import, give the privilege to all those persons, without any regard to the person with whom they contract. It is said that by this construction double liens are created: one in favor of the principal contractor, and another, for the same identical thing, in favor of the sub-contractor under him. This may be so, and it is one of the practical inconveniences of the statute provision. But the ship owes but one debt; and the discharge of the sub-contractor's lien, by the payment of his demand, would discharge also that of the principal pro tanto, though the payment of the principal contractor might not discharge the sub-contractor's lien. The reason of the distinction is, that it is the duty of the principal contractor to pay this debt, and if he neglects it, and suffers the ship to be attached, it would be an equitable offset to so much of his claim against the owner as the debts, which the owner has by his default been obliged to pay, amount to. It is again said that the lien may be secured by an attachment at common law. An attachment must be on a suit commenced. But the sub-contractor has no contract with the owner, and no personal claim against him; for the general undertaker does not contract as the agent of the owner, but on his own account. He, therefore, can sue in a personal action, only the party with whom he contracts, and it is asked, how shall he hold the owner's property in a suit against another person for the proper debt of that person, the undertaker. The answer is, that in this special case, the law gives him that right, not against the owner's property generally, but against the particular thing which, to the extent of his demand, is the product of his own labor. But this objection would naturally strike a court of common law with more force, on account of the singular anomaly it introduces into its course of proceedings, than it would a court of admiralty, where the process is against the thing, and where in these maritime liens the court is in the habit of considering the credit as given to the thing itself, and regarding that as a principal debtor.

The counsel for the claimant, in a strong and ingenious argument to show that, under the statutes of this state, the lien is confined to persons who contract directly with the owner, has referred to a number of decisions of courts of other states, on laws analogous to that of this state. One general remark will apply to all. So far as they were adjudications on liens created by statutes, and not existing at common law, they apply to the present case only by an imperfect analogy. The language in all these statutes differs from that of the law of this state. The authority, which appears to me to apply with the most stringency, is the case of Smith v. The Eastern Railroad [Case No. 13,039], decided by the circuit court in Massachusetts. This was on a statute of Massachusetts, giving a lien on domestic vessels similar to that given by the laws of this state. The court came to the conclusion, partly from a consideration of the language of the act, which was considered not to be in itself decisive, and partly from the analogy of this statute to other statutes of the same state in pari materia, that the intention of the legislature was to give to the classes of persons embraced by the act, the same rights and remedies against domestic vessels, that are allowed by the general maritime laws of the country against foreign vessels, or those belonging to another state. By this general unwritten maritime law, all persons who are employed in the repair of a vessel, who furnish materials for that purpose, or provisions and stores for the use of the crew, have a lien on the ship for their security, which may be enforced by a libel in rem in the admiralty. But this lien is understood to exist only in favor of persons who contract directly with the owner, or his authorized agent in his behalf (generally in the case of repairs, or the furnishing of ships' stores, the master), and does not extend to others from whom he may obtain the materials, or whom he may employ to do the work. The lien results from the performance of a contract made directly binding on the owner as well as the agent. The statute of Massachusetts is as broad as the general maritime law, and embraces all the classes of persons who have a lien under that law, those who furnish provisions and stores for the use of the ship's company, as well as mechanics and others who perform labor and furnish materials, used in the repairs or equipment of the vessels. It covers the whole of this chapter of the maritime law, and gives to the mechanics and material men the same remedies against domestic vessels which they before had against foreign vessels. The statute of this state does not include one important class of creditors, those who furnish provisions and stores for the ship. It is confined to those whose labor or materials are

directly applied to the construction or repairs of the ship, become incorporated in it, and make part of the thing itself. It cannot then be fairly considered as a mere extension of the remedy, already existing against foreign, to domestic vessels.

The legislature of this state appears to me to have had a different object in view,—that of giving a security to every person who has furnished materials for the construction or repair of a ship (and they must of course be received for that purpose by some one who is authorized to do it), or has performed labor in the progress of the work, a lien on the ship for the short space of four days after the ship is launched, if a new ship, or after the repairs are completed, if the ship is already launched, without regard to the particular person with whom the contract is made. Such is the proper, ordinary, and natural meaning of the words of this section, and it appears to me that nothing short of this will satisfy their meaning. If we were permitted to go beyond the words of the law, and conjecture the motives of the legislature, we may readily suppose them to have been to secure the material men and laborers a compensation for their materials and labor against the insolvency of the contractor; and this may be done without injury to the contractor, or material inconvenience to the owner, who may retain in his hands a sufficient sum to meet these contingencies, until the four days have elapsed. This section of the Revised Statutes is copied, with some alteration, from the statute of February 19, 1834 [Laws Me. 1834, p. 109]. That gave to this same class of persons the same lien, and for the same term of time as the present law. The only change in the language, which requires to be noticed, is that the act of 1834 gave the lien when the materials were furnished, or the labor performed by virtue of any written or parol contract. These words were dropped in the revision, but this makes no change in the meaning, nor can it alter the construction of the act, because in all cases there must be a contract either expressed or implied.

A case was brought before this court in 1840, at the time when the statutes were under the process of revision, involving the construction of this law. The decision is reported under the name of The Calisto [Case No. 2,316]. It was carried by appeal to the circuit court, and the decision of that court is reported under the name of Read v. Hull of a New Brig [Id. 11,609]. That, like the present, was a case of claim, by a mechanic, of a lien on a new ship, built under a contract with the owner and claimant, by one Spear. The libellant was employed by Spear to do a part of the blacksmith work. The statement of the facts and pleadings in both reports is very brief; but I have examined the original papers, and find that Purinton, the owner, in his answer distinctly alleges that Spear built the vessel for him under a con-tract; that Read, the libellant, "was not engaged or employed by him in any manner, that he made no agreement with him whatever," and that if he did any work on board the vessel, it was as a laborer in the employment of Spear. The answer therefore distinctly presented the general question which has been argued in this case, whether a sub-contractor has a lien, yet singularly enough, if it be so clear as the claimants would appear to suppose, that no lien does exist in his favor, this general question is not adverted to either in the opinion of the district or circuit court, and as far as can be collected from the reports, does not appear to have been raised by counsel; though the counsel on both sides were eminent in the profession, and particularly conversant with maritime law. But this general question, whether a sub-contractor has a lien, if decided in the negative, was perfectly decisive of the whole case, and was indeed the first question presented in the case. And still it appears to have been passed sub silentio by the counsel, as it certainly was by the court, and the decision turned in both courts altogether on the specialties of the libellant's contract. He was hired by Spear on a general contract for monthly wages for various labor, and was actually employed part of the time in agricultural labor on a farm, and part of the time at his trade as a blacksmith. And while he was in the shop, part of his time was employed in work on the vessel, and part of the time in other jobs. It was held that a person employed under such a general retainer had no lien against the ship, although he might be part of the time employed upon it; that the lien given by the statute extended only to cases where by the agreement the service is rendered, and the materials are furnished for and on account of the particular vessel against which it is claimed. It is only in such a case that the creditor is supposed to trust the vessel. It was on this particular point that the decision turned in both courts, and not at all on the general question of a sub-contractor's lien. I do not wish to be considered as referring to the opinion I gave in the case as of any importance, but it seems to me that the silence of Judge Story is not without its significancy. That great judge was so much in the habit of giving a full consideration to all questions which were discussed at the bar, and even when not raised by counsel, if they occurred to him as important, that it is not easily to be supposed that this question which in fact lay at the very foundation of the libellant's claim, the first which occurred in the case, would have been passed over in silence, if he had not considered it as decisively settled by the language of the statute; and indeed this is of the most comprehensive character. If the intention of the legislature was what I suppose it to have been, it could hardly have been expressed in any general terms more explicit and significant; and it appears to me

in that case, that the court put the only restriction on their comprehensiveness that they fairly admit. The principle involved in this case is one of great practical importance to the ship-building interest in this state, and as I understand there is a diversity of opinion on the subject in the profession, I hope the case will be carried to the circuit court for a final decision. Decree for the libellant.

The decree was affirmed, on appeal, by the circuit court. [Case No. 11,472.]